1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11  EVERT KEITH HOWARD,                ) 1:10-cv—02318-AWI-SKO-HC
                                       )
12              Petitioner,            ) FINDINGS AND RECOMMENDATIONS RE:
                                       ) RESPONDENT'S MOTION TO DISMISS
13                                     ) THE PETITION (DOCS. 13, 1)
        v.                             )
14                                     ) FINDINGS AND RECOMMENDATIONS TO
    JAMES YATES, Warden,               ) DISMISS THE PETITION AS UNTIMELY
15                                     ) (DOC. 1), DECLINE TO ISSUE A
                Respondent.            ) CERTIFICATE OF APPEALABILITY,
16                                     ) AND DIRECT THE CLERK TO CLOSE
    _____) THE CASE
17
                                       **OBJECTIONS DEADLINE:**
18                                     **THIRTY (30) DAYS**
19

20      Petitioner is a state prisoner proceeding pro se with a

21  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

22  The matter has been referred to the Magistrate Judge pursuant to

23  28 U.S.C.§ 636(b)(1) and Local Rules 302 and 304.  Pending before

24  the Court is the Respondent's motion to dismiss the petition as

25  untimely, which was filed on February 14, 2011.  Paper documents

26  were lodged in support of the motion.  Petitioner filed an

27  opposition to the motion on April 6, 2011, but no reply was

28  filed.

1

1        I.   <u>Proceeding by a Motion to Dismiss</u>

2        Respondent has filed a motion to dismiss the petition on the

3    ground that Petitioner filed his petition outside of the one-year

4    limitation period provided for by 28 U.S.C. § 2244(d)(1).

5        Rule 4 of the Rules Governing Section 2254 Cases in the

6    United States District Courts (Habeas Rules) allows a district

7    court to dismiss a petition if it "plainly appears from the face

8    of the petition and any exhibits annexed to it that the

9    petitioner is not entitled to relief in the district court...."

10        The Ninth Circuit has allowed respondents to file motions to

11   dismiss pursuant to Rule 4 instead of answers if the motion to

12   dismiss attacks the pleadings by claiming that the petitioner has

13   failed to exhaust state remedies or has violated the state's

14   procedural rules.  <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418,

15   420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss

16   a petition for failure to exhaust state remedies); <u>White v.</u>

17   <u>Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to

18   review a motion to dismiss for state procedural default); <u>Hillery</u>

19   <u>v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).

20   Thus, a respondent may file a motion to dismiss after the Court

21   orders the respondent to respond, and the Court should use Rule 4

22   standards to review a motion to dismiss filed before a formal

23   answer.  <u>See</u>, <u>Hillery</u>, 533 F. Supp. at 1194 & n.12.

24        In this case, Respondent's motion to dismiss addresses the

25   untimeliness of the petition pursuant to 28 U.S.C. 2244(d)(1).

26   The material facts pertinent to the motion are mainly to be found

27   in copies of the official records of state judicial proceedings

28   which have been provided by Respondent and Petitioner, and as to

2

which there is no factual dispute.  Because Respondent has not filed a formal answer, and because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

    II.  Background

    Petitioner alleged in the petition that he was an inmate of the Pleasant Valley State Prison (PVSP) located within the Eastern District of California, serving a sentence of fifteen (15) years to life imposed by the Fresno County Superior Court on December 1, 2006, upon Petitioner's conviction of second degree murder in violation of Cal. Pen. Code § 187.  (Pet. 1.) Petitioner challenges his conviction, claiming 1) his trial counsel rendered ineffective assistance in violation of Petitioner's Sixth and Fourteenth Amendment rights by permitting improper instructions concerning malice, which resulted in a lowering of the prosecutor's burden of proof; and 2) the trial court improperly instructed the jury with respect to malice and general intent (CALJIC nos. 1.22 and 3.30).  (Id. at 5, 7.) Petitioner seeks a new trial, or, in the alternative, an evidentiary hearing to investigate his claim that trial counsel was ineffective.  (Id. at 15.)

    The pertinent state court proceedings are briefly summarized below.

    On December 1, 2006, Petitioner was sentenced to an indeterminate term of fifteen (15) years to life pursuant to Petitioner's conviction of second degree murder on June 8, 2006.

3

1  (L.D. 1.)[1]

2      In an opinion filed on February 29, 2008, in case number
3  F051859, the Court of Appeal of the State of California, Fifth
4  Appellate District (DCA) affirmed the judgment. (L.D. 2.)

5      A petition for review filed on behalf of Petitioner on or
6  about April 10, 2008, in case number S162499 was summarily denied
7  by the California Supreme Court on June 11, 2008. (L.D. 4.)

8      On January 29, 2009,[2] Petitioner filed a petition for writ
9  of habeas corpus in the Fresno County Superior Court, which was
10 denied in a decision filed on March 4, 2009. (L.D. 5-6.)

11     On May 22, 2009,[3] Petitioner filed a petition for writ of
12 habeas corpus in the DCA, which was summarily denied on July 23,
13 2009. (L.D. 7-8.)

14     On or about November 10, 2009, Petitioner filed a petition
15 for writ of habeas corpus in the California Supreme Court. (L.D.
16 9.) Next to the signature on page six of the petition form

17

18     [1] "L.D." refers to lodged documents submitted by Respondent in support
of the motion to dismiss.

19     [2] Under the mailbox rule, a prisoner's pro se habeas petition is "deemed
20 filed when he hands it over to prison authorities for mailing to the relevant
court." Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001); Houston v.
21 Lack, 487 U.S. 266, 276 (1988). The mailbox rule applies to federal and state
petitions alike. Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010)
22 (citing Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th. Cir. 2003), and Smith
v. Ratelle, 323 F.3d 813, 816 n.2 (9th Cir. 2003)). It has been held that the
23 date the petition is signed may be inferred to be the earliest possible date
an inmate could have submitted his petition to prison authorities for filing
under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir.
24 2003), overruled on other grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005).
    Here, the signature on the petition filed in the Superior Court is not
25 accompanied by a date, and the petition is otherwise undated. No post-marked
envelope or proof of service is before the Court. (L.D. 5.) Thus, the Court
26 considers the date the petition was marked filed by the Superior Court as the
date of filing. (L.D. 5, 1.)

27     [3] Again, the signature page of the petition lacks a date, and there is no
corresponding proof of service or post-marked envelope before the Court.
28 Thus, the Court considers the petition to have been filed as of the date of
filing as marked by the DCA. (LD 7, 1.)

appears the date of November 10, 2009.  Respondent suggests using the date of signing to give Petitioner the benefit of the mailbox rule.  (Mot., 5:24-28.)  The Court considers the date of signing, November 10, 2009, to be the earliest possible date that Petitioner could have submitted his petition to the prison authorities for mailing.

On May 12, 2010, the California Supreme Court summarily denied the petition.  (L.D. 10.)

The petition filed in this action was signed by Petitioner on November 18, 2010, and provides as follows:

> I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on 11/18/10 (month, date, year).

Thus, applying the mailbox rule, the court concludes that Petitioner filed the petition before the Court on November 18, 2010.

III.   The Statute of Limitations

A.   Legal Standards

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA applies to all petitions for writ of habeas corpus filed after the enactment of the AEDPA.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118 S.Ct. 586 (1997).  Petitioner filed his original petition for writ of habeas corpus on November 18, 2010.  Thus, the AEDPA applies to the petition.

The AEDPA provides a one-year period of limitation in which a petitioner must file a petition for writ of habeas corpus.  28

U.S.C. § 2244(d)(1).  As amended, subdivision (d) reads:

>       (1)  A 1-year period of limitation shall apply to
> an application for a writ of habeas corpus by a person
> in custody pursuant to the judgment of a State court.
> The limitation period shall run from the latest of –

>            (A) the date on which the judgment became
> final by the conclusion of direct review or the
> expiration of the time for seeking such review;

>            (B) the date on which the impediment to
> filing an application created by State action in
> violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from
> filing by such State action;

>            (C) the date on which the constitutional right
> asserted was initially recognized by the Supreme Court, if
> the right has been newly recognized by the Supreme Court and
> made retroactively applicable to cases on collateral review;
> or

>            (D) the date on which the factual predicate
> of the claim or claims presented could have been
> discovered through the exercise of due diligence.

>       (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted
> toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

>    B.  <u>Commencement of the Running of the Limitation
>        Period</u>

In the present case, no circumstances appear to warrant the

application of § 2244(d)(1)(B) through (D).  Thus, the Court will

determine the date on which the judgment became final within the

meaning of § 2244(d)(1)(A).

Under § 2244(d)(1)(A), the "judgment" refers to the sentence

imposed on the petitioner.  <u>Burton v. Stewart</u>, 549 U.S. 147, 156-

57 (2007).  The last sentence was imposed on Petitioner on

December 1, 2006.

///

Under § 2244(d)(1)(A), a judgment becomes final either upon the conclusion of direct review or the expiration of the time for seeking such review in the highest court from which review could be sought. Wixom v. Washington, 264 F.3d 894, 897 (9th Cir. 2001). The statute commences to run pursuant to § 2244(d)(1)(A) upon either 1) the conclusion of all direct criminal appeals in the state court system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or 2) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state court system followed by the expiration of the time permitted for filing a petition for writ of certiorari. Wixom, 264 F.3d at 897 (quoting Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)).

The Court will apply Fed. R. Civ. P. 6(a) in calculating the pertinent time periods. Fed. R. Civ. P. 6(a); see, Waldrip v. Hall, 548 F.3d 729, 735 n.2 (9th Cir. 2008); Patterson v. Stewart, 251 F.3d 1243, 1245-46 (9th Cir. 2001).

Here, Petitioner's direct review concluded when his petition for review was denied by the California Supreme Court on June 11, 2008. The time for seeking further review expired ninety days later, when the period in which Petitioner could petition for a writ of certiorari from the United States Supreme Court expired. Supreme Court Rule 13; Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). The ninety-day period began on June 12, 2008, and concluded on September 9, 2008.

Thus, the limitation period began to run on September 10, 2008, and concluded one year later on September 9, 2009.

7

1  28 U.S.C. § 2244(d)(1); Fed. R. Civ. P. 6(a).

2      Because the petition in the instant case was not filed until

3  November 18, 2010, the petition appears on its face to have been

4  filed outside the applicable one-year limitation period.

5           C.  <u>Statutory Tolling</u>

6      Title 28 U.S.C. § 2244(d)(2) states that the "time during

7  which a properly filed application for State post-conviction or

8  other collateral review with respect to the pertinent judgment or

9  claim is pending shall not be counted toward" the one-year

10 limitation period.  28 U.S.C. § 2244(d)(2).

11     Once a petitioner is on notice that his habeas petition may

12 be subject to dismissal based on the statute of limitations, he

13 has the burden of demonstrating that the limitations period was

14 sufficiently tolled by providing the pertinent facts, such as

15 dates of filing and denial.  <u>Zepeda v. Walker</u>, 581 F.3d 1013,

16 1019 (9th Cir. 2009) (citing <u>Smith v. Duncan</u>, 297 F.3d 809, 814-

17 15 (9th Cir. 2002), <u>abrogation on other grounds recognized by</u>

18 <u>Moreno v. Harrison</u>, 245 Fed.Appx. 606 (9th Cir. 2007)).

19     In <u>Carey v. Saffold</u>, 536 U.S. 214 (2002), the Court held

20 that an application is "pending" until it "has achieved final

21 resolution through the State's post-conviction procedures."  536

22 U.S. 220.  An application does not achieve the requisite finality

23 until a state petitioner "completes a full round of collateral

24 review."  <u>Id.</u> at 219-20.  Accordingly, in the absence of undue

25 delay, an application for post conviction relief is pending not

26 only during its pendency before a court, but also during the

27 "intervals between a lower court decision and a filing of a new

28 petition in a higher court" and until the California Supreme

8

1  Court denies review.  Id. at 223; Biggs v. Duncan, 339 F.3d 1045,

2  1048 (9th Cir. 2003).

3      However, when one full round up the ladder of the state

4  court system is complete and the claims in question are

5  exhausted, a new application in a lower court begins a new round

6  of collateral review.  Biggs v. Duncan, 339 F.3d at 1048.  For

7  example, the statute of limitations is not tolled from the time a

8  final decision is issued on direct state appeal and the time the

9  first state collateral challenge is filed because there is no

10  case "pending" during that interval.  Nino v. Galaza, 183 F.3d

11  1003, 1006 (9th Cir. 1999).

12      Here, Petitioner's first state collateral petition was filed

13  in the trial court on January 29, 2009, and remained pending

14  until March 4, 2009, when it was denied.  A total of 141 days of

15  the limitation period ran after the commencement of the period on

16  September 10, 2008, and until the filing of the trial court

17  petition on January 29, 2009.  Thereafter, the statute was tolled

18  for 35 days during the pendency of the petition from January 29,

19  2009, through and including March 4, 2009, the date the petition

20  was denied.

21      Petitioner's next petition for collateral relief was filed

22  on May 22, 2009, in the DCA, and remained pending until summary

23  denial on July 23, 2009.

24      Respondent contends that the delay of 79 days before filing

25  the DCA petition was unreasonable, and thus Petitioner is not

26  entitled to tolling for the interval between denial by the trial

27  court and filing the petition in the DCA.

28  ///

1  State time limits are conditions to filing which render a
2  petition not properly filed.  Pace v. DiGuglielmo, 544 U.S. 408,
3  417 (2005).  When a state court rejects a petition for post-
4  conviction relief as untimely, the petition is not a "properly
5  filed" application for post-conviction or collateral review
6  within the meaning of § 2244(d)(2), and thus it does not toll the
7  running of the limitation period.  Pace v. DiGuglielmo, 544 U.S.
8  408, 417 (2005).

9  In California, instead of filing an appeal from a lower
10 court's denial of a habeas petition, a petitioner may file serial
11 original petitions in each higher court.  Further, there are no
12 concrete time limits on the filing of petitions for collateral
13 relief; rather, the timeliness of each filing is determined
14 according to a "reasonableness" standard.  Carey v. Saffold, 536
15 U.S. at 221-22.  Absent a clear direction or explanation from the
16 California Supreme Court about the meaning of the term
17 "reasonable time" in a specific factual context, or a clear
18 indication that a filing was timely or untimely, a federal court
19 hearing a subsequent federal habeas petition must examine all
20 relevant circumstances concerning the delay in each case and
21 determine independently whether the state courts would have
22 considered any delay reasonable so as to render the state
23 petition "pending" within the meaning of § 2244(d)(2).  Evans v.
24 Chavis, 546 U.S. 189, 197-98 (2006).

25 Here, the DCA summarily denied the petition.  Thus, there is
26 no clear indication that the DCA considered Petitioner's petition
27 timely or untimely.

28 However, the Supreme Court has indicated that in the absence

of contrary information from California, the federal courts will
assume that California's indeterminate reasonableness standard is
applied in a manner that avoids leading to filing delays
substantially longer than those in states with determinate
timeliness rules.  <u>See</u>, <u>Evans v. Chavis</u>, 546 U.S. 189, 199-200.
Delays in filing will thus be compared with the relatively short
periods of time, thirty (30) to sixty (60) days, that most states
provide for filing an appeal.  <u>Evans</u>, 546 U.S. at 201.

A delay of six months has been found to be unreasonable
because it is longer than the relatively short periods of thirty
(30) or sixty (60) days provided by most states for filing
appeals.  <u>Evans v. Chavis</u>, 546 U.S. 189, 201 (2006).  Delays of
one hundred fifteen (115) and one hundred one (101) days between
denial of one petition and the filing of a subsequent petition
have been held to be excessive.  <u>Chaffer v. Prosper</u>, 592 F.3d.
1046, 1048 (9th Cir. 2010).  In <u>Velasquez v. Kirkland</u>, 639 F.3d
964 (9th Cir. 2011), unexplained delays of eighty (80) and
ninety-one (91) days in filing habeas petitions were held to be
unreasonable, and the petitioner was not entitled to tolling for
either the interval between filings or the time during which an
untimely petition itself was pending.  Unexplained, unjustified
periods of ninety-seven (97) and seventy-one (71) days have also
been found to be unreasonable.  <u>Culver v. Director of
Corrections</u>, 450 F.Supp.2d 1135, 1140 (C.D.Cal. 2006).

Here, Petitioner's DCA petition was filed on the seventy-
ninth (79th) day after the trial court petition was denied.  This
interval is approximately several weeks beyond a sixty-day delay,
which is at the outer edge of the short, reasonable periods noted

by the Court in Evans v. Chavis, 546 U.S. 189, 201.  It is just one day short of the delay found unreasonable in Velasquez v. Kirkland, 639 F.3d 964 (9th Cir. 2011).  The Court concludes that the delay was unreasonable.

Petitioner argues that the running of the limitations period was statutorily tolled because in the past few years, changes in the prison system have resulted in restricted access to the law library.  Petitioner describes the access as "extremely limited." (Opp., doc. 17, 5.)  Several years ago the access changed from all day to one-half day because of overcrowding.  In the past two years, rolling lock-downs, involving no programming for one-half day every other day, have occurred with unspecified frequency due to budget shortfalls.  Petitioner alleges that the available time can be limited to just a couple of hours a week, which is further limited by lock-downs and the availability of only five (5) computer terminals during the library's open hours on Mondays through Fridays. (Id.)

To benefit from statutory tolling, a petitioner must adequately justify a substantial delay.  28 U.S.C. § 2244(d)(2); Evans v. Chavis, 546 U.S. 189, 192-93 (2006); Waldrip v. Hall, 548 F.3d 729, 734 (9th Cir. 2008).  Under California law, a habeas "claim or sub-claim that is substantially delayed will nevertheless be considered on the merits if the petitioner can demonstrate 'good cause' for the delay."  In re Robbins, 18 Cal.4th 770, 805 (1998) (citing In re Clark, 5 Cal.4th 750, 783 (1993)).  Petitioner must show particular circumstances, based on allegations of specific facts, sufficient to justify the delay; allegations made in general terms are insufficient.  In re

Robbins, 18 Cal.4th at 787-88, 805 (citing In re Walker, 10

Cal.3d 764, 774 (1974)).  The delay is measured from the time the

petitioner or counsel knew, or reasonably should have known, of

the factual information offered in support of the claim and the

legal basis for the claim.  In re Robbins, 18 Cal.4th 770, 787.

Petitioner has not specifically alleged the frequency of the

lock-downs, and the precise limit on library access is not clear

because he stated only that access "can be limited" to just a

couple of hours weekly.  (Opp., doc. 17, 5.)  Petitioner has not

provided facts concerning the availability of any alternate aids

to legal research, such as the assistance of other inmates or

copying service.  Based on the facts alleged by Petitioner, he

has not established a lack of library access or inability to

complete any needed research at any specific time.  Lack of legal

or procedural knowledge combined with limited access to the

prison law library are not sufficient to justify a substantial

delay where the petitioner was not wholly prevented by lock-downs

or prison employment from using the law library.  Evans v.

Chavis, 546 U.S. 189, 201 (2006.)

Further, Petitioner has not shown how any limitation on

access to the library actually caused the delay in filing the

petition.  The Court notes that the essential allegations and

legal arguments that were presented in the trial court petition

were repeated in the DCA petition. (L.D. 5, 7.)  The issues

raised concerned the alleged failings of trial counsel.

Petitioner has not shown that there was any necessity for delay

in filing a petition that was strikingly similar to the

previously submitted petition.  Cf., Waldrip v. Hall, 548 F.3d

1   729, 736-37 (9th Cir. 2008).

2       Further, one generally does not have a constitutional right
3   to counsel in non-capital, state post-conviction proceedings or
4   in the course of discretionary direct review.  Pennsylvania v.
5   Finley, 481 U.S. 551, 555-57 (1987); Ross v. Moffitt, 417 U.S.
6   600, 610-11 (1974).  Therefore, there is no constitutional right
7   to counsel in non-capital, federal habeas proceedings.  Bonin v.
8   Vasquez, 999 F.2d 425, 429 (9th Cir. 1993).  Thus, pro se status
9   is not in itself a justification for late filing.  In re Clark, 5
10  Cal.4th 750, 765 (1993).  To the extent that Petitioner relies on
11  his pro se status, he has failed to show how his pro se status
12  justified his delay.

13      The Court concludes that Petitioner's delay in filing his
14  DCA petition until the seventy-ninth day after denial of his
15  trial court petition was unreasonable.  The petition was untimely
16  under the California reasonableness standard.  Thus, the statute
17  should not be tolled for either the time during which the DCA
18  actually considered the petitioner's habeas petition or the time
19  between the denial of the previous petition and the filing of the
20  DCA petition.  White v. Martel, 601 F.3d 882, 883-84 (9th Cir.
21  2010), cert. denied, 131 S.Ct. 332 (2010); Bonner v. Carey, 425
22  F.3d 1145, 1149 (9th Cir. 2005), amended by Bonner v. Carey, 439
23  U.S. 993 (9th Cir. 2009), cert. denied, 549 U.S. 856 (2006).

24      Therefore, in addition to the 141 days that ran before the
25  filing of the Superior Court petition on September 10, 2008, an
26  additional 78 days ran between the denial of the trial court
27  petition on March 4, 2009, and the filing of the DCA petition on
28  May 22, 2009, and an additional 61 days ran during the time that

14

the untimely DCA petition was pending before the DCA until its denial on July 23, 2009.  Thus, 280 days of the limitation period ran by the date the DCA petition was denied on July 23, 2009.

Respondent argues that the statute should not be tolled for the delay of 110 days after the DCA's denial of the petition on July 23, 2009, until the filing of the petition in the California Supreme Court on November 10, 2009.  The Court counts 109 days of delay.  In either case, the delay far exceeded the relatively short delays of thirty (30) or sixty (60) days considered reasonable in light of the practices of most states.  The Court concludes that the delay of 109 days was unreasonable.

Although Petitioner argues that the delay was justified by the limitations on law library access, the foregoing analysis demonstrates that Petitioner did not show that a limitation on law library access precluded him from filing a timely petition. The Court notes that with the exception of one attachment, consisting of the Superior Court's order of denial dated March 4, 2009, the petition filed in the California Supreme Court was virtually identical to the petition filed in the DCA.

Petitioner further argues that the delay was reasonable because he took time to correspond with the DCA concerning the petition that he had filed there, in which he had alleged inadequate assistance of counsel.  After the petition was filed in the DCA on May 22, 2009, the Clerk of the DCA wrote Petitioner's trial counsel on May 29, 2009, notifying him that Petitioner had raised an issue concerning his representation in the Superior Court, and granting counsel leave to file an informal response and declaration in the habeas proceeding to

respond to Petitioner's allegations of ineffective

representation.  (Doc. 17, 8.)  After expressing appreciation for

any assistance that would be offered, the Clerk stated:

> Without your assistance, it may be necessary to
> order a hearing before the superior court.

(Id. at 9.)  The letter reflects that a copy was sent to

Petitioner, and that counsel was instructed to serve any response

only on the Court and Petitioner.  (Id. at 8.)  The petition was

denied by the DCA on July 23, 2009.

The DCA's docket reflects that on August 13, 2009, a letter

dated August 3, 2009, was received from Petitioner.  The entry

states:

> Letter dated 8/3/09 from petnr Howard re:
> Denial of motion and no response received from
> former attorney (W1)

On August 21, 2009, the clerk of the DCA sent to Petitioner

a letter stating the following:

> The court has authorized the following response
> to your inquiry dated August 3, 2009, as follows:
> This court did not receive any response from trial
> counsel.

> This court's letter sent on May 29, 2009, only
> stated that without counsel's response, "it may
> be necessary to order a hearing before the superior
> court."  Thus, the letter did not require a hearing
> even if counsel did not respond.

(Id. at 7.)

Petitioner contends that when he received the DCA's order

denying his habeas petition on July 23, 2009, he had not been

apprised of his counsel's response to the DCA's letter inviting

input from counsel on the ineffective assistance claim.

Petitioner argues that it was reasonable to seek clarification

from the DCA to see if his counsel had, in fact, responded.

16

1    However, as a party to the habeas proceeding in the DCA,

2   Petitioner would have been served with any input his counsel had

3   submitted in the action.  Indeed, counsel had been specifically

4   instructed by the DCA to send any informal response and

5   declaration only to the DCA and to the Petitioner; the DCA would

6   treat it as sealed.  (Doc. 17, 8.)  Thus, it was not reasonable

7   for Petitioner to expect that any matter would have been

8   submitted by counsel without having been served on him.

9    Petitioner argues that he had a reasonable expectation that

10  the DCA would hold an evidentiary hearing if counsel did not

11  cooperate with the court by submitting a declaration in response

12  to the DCA's invitation.  However, as the DCA's correspondence

13  reflects, the letter sent to counsel states only that it might be

14  necessary to order a hearing before the Superior Court if counsel

15  did not respond to the letter.  Thus, the letter only raised a

16  possibility of proceedings for factual development in the trial

17  court; it did not indicate that such proceedings were necessary

18  or even likely.

19   Petitioner argues that he could not proceed with another

20  writ to the California Supreme Court when his issues had not been

21  fully resolved at the DCA level.  However, the entire petition

22  was denied by the denial order of July 23, 2009; the docket

23  expressly reflects that as of that date, the case was complete.

24  (L.D. 8, 1.)

25   Petitioner argues that his letter is reasonably described as

26  a motion for reconsideration and/or clarification, which was

27  denied on August 21, 2009 – the date of the letter sent from the

28  DCA clerk in response to Petitioner's letter.  The Court does not

have a copy of the document sent to the DCA by Petitioner that
was dated August 3, 2009, which the DCA docket reflects was
received on August 13, 2009. (L.D. 8, 1.)  However, Petitioner
himself describes it as a "letter." (Opp., doc. 17, 4.)  The
DCA's docket reflects that the document was received on August
13, 2009, and describes it as follows:

> Letter dated 8/3/09 from petnr Howard re: Denial of
> motion and no response received from former attorney
> (W1)

(Id.)

The DCA's response to Petitioner's letter was described in
the docket as a "Letter," and it did not purport to reconsider a
ruling or issue a decision or disposition. It instead explained
that no response had been received from trial counsel, and the
court's previous letter to counsel had only stated that it might
be necessary to order a hearing and emphasized that the court's
previous letter inviting counsel to respond had not required a
hearing if counsel failed to respond.  The DCA's responsive
letter was from the clerk, and not from a justice or panel of
justices.  It thus does not appear that it was considered, or
reasonably could have been considered, to have been a petition
for rehearing.

The Court concludes that the delay of 109 days between July
23, 2009, when the DCA petition was denied, until the filing of
the petition in the California Supreme Court on November 10,
2009, was unjustified and was unreasonable.  Accordingly, the
time interval after the DCA's denial of the petition and before
the filing of the petition in the Supreme Court is not tolled.
The final eighty-five (85) days remaining in the limitation

period expired on October 16, 2009, long before Petitioner filed a petition in the California Supreme Court on November 10, 2009.

The Court further notes that if the correspondence concerning counsel's input in the DCA were considered to be adequate justification for the delay in filing a petition in the California Supreme Court, then the statute would be tolled from July 24, 2009, the first day after the DCA's denial, for a month (comprised of the time after the denial until the date on which the DCA's letter of August 21, 2009, would have been served by mail on Petitioner), or through August 24, 2009.

Under such an assumption, thirty-two (32) days of the limitation period would be tolled.  The period of delay in filing in the California Supreme Court would thus have extended from August 25, 2009, through November 10, 2009, for a total of seventy-seven (77) days.  This length of delay is also unreasonable, and the petition filed in the Supreme Court was untimely.  Thus, the interval before the filing of the petition as well as the period of pendency of the petition in the California Supreme Court would not be tolled.

Even if the limitation period were tolled not only during the interval between the DCA's denial and the filing of a petition in California Supreme Court, but also during the period in which the petition was actually pending before the California Supreme Court, the limitation period would have run before Petitioner filed his petition here.  After the California Supreme Court denied the petition on May 12, 2010, a total of 189 days passed before Petitioner filed his petition here on November 18, 2010.  Two hundred eighty (280) days had already passed before

1   the petition was filed in the DCA.   Thus, Petitioner's petition

2   was untimely.

3          D.   Equitable Tolling

4          It is unclear whether Petitioner is arguing that the

5   petition was equitably tolled.   In an abundance of caution, the

6   Court will consider under the rubric of equitable tolling the

7   justifications that Petitioner offers for the delay.

8          The one-year limitation period of § 2244 is subject to

9   equitable tolling where the petitioner has been diligent, and

10  extraordinary circumstances, such as the egregious misconduct of

11  counsel, have prevented the petitioner from filing a timely

12  petition.   Holland v. Florida, – U.S. –, 130 S.Ct. 2549, 2560

13  (2010).   The petitioner must show that the extraordinary

14  circumstances were the cause of his untimeliness and that the

15  extraordinary circumstances made it impossible to file a petition

16  on time.   Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).

17  The diligence required for equitable tolling is reasonable

18  diligence, not "maximum feasible diligence."   Holland v. Florida,

19  130 S.Ct. at 2565.

20          "[T]he threshold necessary to trigger equitable tolling

21  [under AEDPA] is very high, lest the exceptions swallow the

22  rule."   Spitsyn v. Moore, 345 F.3d 796, 799 (quoting Miranda v.

23  Castro, 292 F.3d 1063, 1066 (9th Cir. 2002)).

24          Here, Petitioner's pro se status and the limitations on

25  access to the law library are not sufficient to warrant equitable

26  tolling.   Petitioner's pro se status is not an extraordinary

27  circumstance.   Chaffer v. Prosper, 592 U.S. 1046, 1049 (9th Cir.

28  2010).   A pro se petitioner's confusion or ignorance of the law

20

is not alone a circumstance warranting equitable tolling. Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006). Likewise, limitations on law library access and research materials are not extraordinary, but rather are normal conditions of prison life. Chaffer v. Prosper, 592 F.3d at 1049.

Further, Petitioner has not shown how any specific instance of inadequacy of access or materials caused him to be unable to file a timely petition. Accordingly, the Court concludes that Petitioner has not shown that the limitation period was equitably tolled. It will, therefore, be recommended that the petition be dismissed as untimely.

IV. Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases. Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

V.  Recommendations

Accordingly, it is RECOMMENDED that:

1)  Respondent's motion to dismiss the petition be GRANTED; and

2)  The petition be DISMISSED as untimely; and

3)  The Court DECLINE to issue a certificate of appealability; and

4)  The Clerk be DIRECTED to close the case.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    July 8, 2011**                          /s/ **Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE